**REVERSE and REMAND and Opinion Filed March 29, 2024**



In The

# Court of Appeals
## Fifth District of Texas at Dallas

### No. 05-22-01109-CR

**DERRICK DAVIS, Appellant**
**V.**
**THE STATE OF TEXAS, Appellee**

**On Appeal from the 291st Judicial District Court**
**Dallas County, Texas**
**Trial Court Cause No. F21-18619**

## MEMORANDUM OPINION
Before Justices Molberg, Pedersen, III, and Nowell
Opinion by Justice Molberg

Derrick Davis appeals his conviction for stalking. After the jury found appellant guilty of stalking and that he had committed a prior offense of stalking, it assessed punishment at sixteen years' confinement and a $5,000 fine. In ten issues on appeal, appellant generally contends the jury charge was erroneous, the trial court abused its discretion by failing to instruct the jury on the lesser-included offense of harassment, the trial court abused its discretion by allowing the introduction of evidence regarding appellant's prior convictions for stalking and terroristic threat, trial counsel was ineffective for failing to object to the jury charge, and there are

errors in the judgment. Because we agree with appellant the jury charge was erroneous and the error was egregious, we reverse appellant's conviction and remand for further proceedings.

## Factual and Procedural Background

Appellant does not challenge the sufficiency of the evidence to support his conviction; therefore, we provide only a brief recitation of the facts. April Barker began dating appellant after first meeting him and exchanging telephone numbers on Christmas Eve. After a few weeks, Barker and appellant became intimate. The relationship began to sour, and Barker ended the relationship. Appellant then engaged in behavior that ultimately led to his indictment for stalking with a prior offense for stalking.

Among other things, appellant took Barker's telephone from her without her consent while pushing and grabbing her hands, continued to come over to Barker's house although not invited, broke into her house when Barker was not home, came over her fence into her back yard, used his car to block her vehicle, and smashed a friend's car window that was parked in Barker's driveway. Appellant later got into a fight with Barker's male friend that ended with Barker shooting appellant. Appellant also sent Barker numerous text and social media messages. Among the messages, appellant told Barker she was "going to have her hands full," the police would not be able to save her, his objective was to ruin her, and he was going to burn her house down. Appellant was properly indicted for stalking, and after hearing the

evidence, a jury convicted appellant of stalking with a prior conviction for stalking and assessed punishment at sixteen years' confinement with a $5,000 fine. Appellant was also indicted for burglary, but the jury did not convict appellant on that charge. This appeal followed.

## Jury Charge Error

In his first issue, appellant contends he was egregiously harmed when the trial court omitted two elements of the offense of stalking from the jury charge. According to appellant, a review of the record as a whole shows the flawed charge significantly lessened the State's burden of proof and did not require the jury to decide "perhaps the most contested issue of the case," whether Barker felt threatened by appellant's conduct. The State concedes the jury charge was erroneous, but maintains appellant was not egregiously harmed. After reviewing the record, we agree with appellant.

## A. Applicable Law

Constitutional due process protects the accused from conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged. *Francis v. Franklin*, 471 U.S. 307, 313 (1985). Constitutional due process also "guarantees criminal defendants 'a meaningful opportunity to present a complete defense.'" *Crane v. Kentucky*, 476 U.S. 683, 690 (1986) (quoting *California v. Trombetta*, 467 U.S. 479, 485(1984)). These are "bedrock, axiomatic[,] and elementary" constitutional principles that protect a defendant from—among

–3–

other things—jury charge issues that would effectively relieve the State of meeting its burden on every element of the charged offense. *See Francis*, 471 U.S. at 313. We hold the State to such a high burden in criminal prosecutions because the stakes—one's life and liberty—are so great and because we as a society have made a "fundamental value determination" that it is "far worse to convict an innocent man than to let a guilty man go free." *Id*. (*quoting In re Winship*, 397 U.S. 358, 372 (1970) (Harlan, J., concurring)).

The purpose of the jury charge is to inform the jury of the applicable law and guide them in its application to the case. *Hutch v. State*, 922 S.W.2d 166, 170 (Tex. Crim. App. 1996). It is not the function of the charge merely to avoid misleading or confusing the jury. Rather, the jury charge must lead and prevent confusion. *Id*.

When, as here, the defendant does not object to jury-charge error at trial and raises the issue for the first time on appeal, reversal is warranted only if the error resulted in egregious harm. *Nava v. State*, 415 S.W.3d 289, 298 (Tex. Crim. App. 2013); *Almanza v. State*, 686 S.W.2d 157, 171 (Tex. Crim. App. 1985). Egregious harm is a difficult standard to meet and should be determined on a case-by-case basis. *Marshall v. State*, 479 S.W.3d 840, 843 (Tex. Crim. App. 2016); *Villarreal v. State*, 453 S.W.3d 429, 433 (Tex. Crim. App. 2015). Courts are required to examine the relevant portions of the entire record to determine whether the defendant suffered actual harm, as opposed to theoretical harm, as a result of the error. *Marshall*, 479 S.W.3d at 843; *Almanza,* 686 S.W.2d at 174. Charge error is

–4–

egregiously harmful if it "affects the very basis of the case, deprives the defendant of a valuable right, or vitally affects a defensive theory." *Villarreal*, 453 S.W.3d at 433; *Almanza*, 686 S.W.2d at 172. In examining the record to determine whether charge error has resulted in egregious harm, we consider (1) the entirety of the charge; (2) the state of the evidence, including the contested issues and weight of probative evidence; (3) the arguments of counsel; and (4) any other relevant information revealed by the trial record as a whole. *Villarreal*, 453 S.W.3d at 433; *Almanza*, 686 S.W.2d at 171.

Section 42.072 of the Texas Penal Code provides a person commits the offense of stalking if the person, on more than one occasion and pursuant to the same scheme or course of conduct that is directed at a specific other person, knowingly engages in conduct as defined by three elements set out in subsections (a)(1), (2), and (3). *See* TEX. PENAL CODE 42.072. As relevant to this case, the first of these elements provides the defendant's conduct must be conduct that constitutes an offense under section 42.07 (harassment), or that the defendant knows or reasonably should have known the other person will regard as threatening bodily injury or death or that an offense will be committed against that person's property.[1] *See id.* 42.072(a)(1).

---

[1] Section 42.072 also makes it an offense for certain conduct that is directed toward a member of the complainant's family or household or an individual with whom the complainant has a dating relationship. Because the alleged conduct in this case focused on Barker and her property, we focus on those aspects of the penal code.

The second element provides the defendant's conduct must be conduct that causes the complainant to be placed in fear of bodily injury or death, be placed in fear that an offense will be committed against the complainant's property, or feel harassed, annoyed, alarmed, abused, tormented, embarrassed, or offended. *See id*. 42.072(a)(2). Finally, the third element requires that the defendant's conduct would cause a reasonable person to fear bodily injury or death, fear an offense will be committed against the person's property, or to feel harassed, annoyed, alarmed, abused, tormented, embarrassed, or offended. *See id*. 42.072(a)(3).

## B. Discussion

In this case, the entire abstract portion of the jury charge provided as follows:

> Our law provides that a person commits the offense of Stalking if the person, on more than one occasion and pursuant to the same scheme or course of conduct that is directed specifically at another person, knowingly engages in conduct that would cause a reasonable person to: Fear bodily injury or death for himself or herself; or fear that an offense will be committed against the person's property; or feel harassed, annoyed, alarmed, abused, tormented, embarrassed, or offended.
>
> You are instructed that different types of conduct, if engaged in on more than one occasion, may constitute conduct that is engaged in pursuant to the same scheme or course of conduct.

In contrast to the indictment and the statute, the abstract portion of the charge sets forth only the element found in section 42.072(a)(3) of the penal code. The charge does not inform the jury of the first and second elements required to convict

appellant. That is, it did not inform the jury the offense of stalking also requires a finding that appellant knew or should have known Barker would regard the conduct as threatening. Nor did the charge inform the jury the offense of stalking required appellant's conduct to cause Barker to be fearful of death or bodily injury, fearful that an offense would be committed against her property, or to feel harassed, annoyed, alarmed, tormented, embarrassed, or offended.

Similarly, the application paragraph instructed the jury to find appellant guilty of stalking if it found beyond a reasonable doubt appellant "knowingly engaged in conduct . . . [that] would cause a reasonable person to fear bodily injury or death for himself or herself; fear that an offense will be committed against the person's property; or feel harassed, annoyed, alarmed, abused, tormented, embarrassed, or offended." The jury was not asked to determine whether appellant knew or should have known his conduct would cause a reasonable person to be in fear or that Barker was in fact afraid as a result of appellant's conduct. Because the charge omitted two elements necessary to convict appellant for stalking, it did not fully instruct the jury on the law applicable to the case and did not fully guide the jury regarding the application of the law to this case. Thus, appellant asserts, the State concedes, and we conclude the jury charge is erroneous. Having done so, we must next determine if the error was egregious.

In examining the record to determine whether charge error has resulted in egregious harm, we consider (1) the entirety of the charge; (2) the state of the

–7–

evidence, including the contested issues and weight of probative evidence; (3) the arguments of counsel; and (4) any other relevant information revealed by the trial record as a whole. *Villarreal*, 453 S.W.3d at 433; *Almanza*, 686 S.W.2d at 171. We consider each of these factors in turn.

**1. Entirety of the Charge**

Here, the jury charge omitted two essential elements of the crime of stalking in the abstract portion of the charge. Thus, the charge did not comprehensively or accurately detail the applicable law. Nor did the application portion of the charge require the jury to find beyond a reasonable doubt all of the elements necessary to support a conviction for stalking. This is not an instance where jury charge error was corrected or ameliorated in another portion of the charge. Because the charge allowed the jury to convict appellant without clearly requiring the jury to find appellant knew or should have known Barker would regard appellant's conduct as threatening or that appellant's conduct actually caused Barker to be fearful, we conclude this factor weighs heavily in favor of egregious harm.

**2. State of the Evidence**

We next consider the state of the evidence, including contested issues and the weight of the probative evidence. *See Almanza*, 686 S.W.2d at 171. This is not a case where the evidence overwhelmingly supported one party's theory of the case and there was scant evidence of the other view. Rather, the record shows the issue of whether Barker was placed in fear and sought police assistance after appellant

began stalking her, or whether she made a false accusation and was calling the police in an attempt to retaliate or because she wanted appellant out of the house without having to go through eviction proceedings, was a central question at trial.

Further, Barker's credibility was strongly contested at trial and the jury heard evidence that although Barker reported appellant's conduct to the police on several occasions, it was not until she shot appellant and a new detective was assigned to the case that any action was taken against appellant. The original detective assigned to the case did not think Barker was credible because, among other things, she had sex with appellant after she had ended the relationship, there was a video recording showing Barker and appellant speaking amicably in her backyard during the time in question, and because she was potentially living with appellant at the time of the offense. The jury also heard evidence that Barker tried to obtain a protective order against appellant but was unable to do so because she did not meet the screening criteria. Finally, the fact the jury acquitted appellant for the offense of burglary suggests the jury had concerns regarding Barker's credibility.

Significantly, the charge error in this case related directly to the contested issue of Barker's credibility. Under the charge in this case, not every juror had to be persuaded that Barker was placed in fear because of appellant's conduct. The charge allowed for conviction without that determination. Consequently, we conclude this factor weighs heavily in favor of egregious harm.

## 3. Arguments of Counsel

We next look to whether any statements made by the State, appellant, or the trial court during trial exacerbated or ameliorated error in the charge. *Arrington v. State*, 451 S.W.3d 834, 844 (Tex. Crim. App. 2015). Although both the State and appellant argued about appellant's and Barker's states of mind, neither appellant nor the State made curative arguments regarding the missing elements. Nothing in the arguments alerted the jury to their obligation to make findings regarding the missing elements. On the other hand, nothing in the arguments emphasized or compounded the error either. Consequently, this factor does not weigh for or against egregious harm.

## 4. Other Relevant Record Information

Finally, we review the record for other relevant information that may require consideration. Here, beginning with voir dire, the jury was not properly instructed regarding the elements necessary for a conviction for stalking. During voir dire, the State told the potential jurors that a person commits the offense of stalking if "the person on one or more occasion or pursuant to the same scheme or course of conduct that is directed specifically at another person knowingly engages in conduct that constitutes an offense under section 42.07, which is essentially harassment, or the actor knows or reasonably should know that the other person will regard as threatening bodily injury or death for a member of the other person's family or household or for an individual with home [sic] the other person has a dating

relationship." Similar to the jury charge, this statement at voir dire provided an incomplete statement of the elements of stalking. And, like the jury charge, it omitted any requirement of a finding that Barker was placed in fear by appellant's conduct.

Further, we note the jury rejected Barker's version of events regarding the charge of burglary, finding appellant was not guilty of that offense. We recognize this was a distinct inquiry from whether appellant committed the offense of stalking. However, it indicates the jury did not find Barker's version of events completely credible. Given the circumstances of this case, we cannot conclude it is highly likely the jury would have convicted appellant of stalking if the jury had been clearly instructed on the necessity of finding Barker was placed in fear by appellant's conduct. We conclude this factor also weighs in favor of egregious harm.

## C. Conclusion

After considering the various *Almanza* factors, we conclude the error in the jury charge deprived appellant of his right to due process and affected his main defensive theory by relieving the State of its high burden of proving, beyond a reasonable doubt, that Barker was placed in fear by appellant's conduct. Thus, we hold appellant was egregiously harmed and we sustain appellant's first issue.

Having done so, we need not address appellant's remaining issues. *See* TEX. R. APP. P. 47.1. We reverse the trial court's judgment and remand for further proceedings.

/Ken Molberg/
KEN MOLBERG
JUSTICE

Do Not Publish
TEX. R. APP. P. 47.2(b)

221109F.U05



# Court of Appeals
# Fifth District of Texas at Dallas

## JUDGMENT

DERRICK DAVIS, Appellant

No. 05-22-01109-CR        V.

THE STATE OF TEXAS, Appellee

On Appeal from the 291st Judicial District Court, Dallas County, Texas Trial Court Cause No. F21-18619. Opinion delivered by Justice Molberg. Justices Pedersen, III and Nowell participating.

Based on the Court's opinion of this date, the judgment of the trial court is **REVERSED** and the cause **REMANDED** for further proceedings consistent with this opinion.

Judgment entered March 29, 2024